NATIONAL CITY TRADING CORPORATION, Ira J. Sands and Michel Gharbi Caradimitropoulo, Petitioners,

v.

UNITED STATES of America and the United States Attorney for the Southern District of New York, Respondents.

No. 80 Civ. 767 (PNL).

United States District Court, S. D. New York.

April 28, 1980.

Marvin B. Segal, Lawrence S. Bader, New York City, for petitioners.

Lesley Oelsner, Richard Ziegler, Asst. U. S. Attys., Gregory O'Connell, Law Student Asst., New York City, for respondents.

**1.** The warrant provided, in pertinent part:

Affidavit(s) having been made before me by William M. Mackey that he has reason to believe that on the premises known as Suite 333, 515 Madison Avenue, New York, New York in the Southern District of New York there is now being concealed certain property, namely property of National City Trading Corp. and persons associated with it, to wit, customer files,

## MEMORANDUM ORDER

LEVAL, District Judge.

On January 15, 1980, agents of the Federal Bureau of Investigation seized property of the National City Trading Corporation ("NCTC"), Ira J. Sands ("Sands"), and Michel Gharbi Caradimitropoulo (collectively referred to as "petitioners") pursuant to a search warrant issued that day by the Honorable Nina Gershon, United States Magistrate.[1] The petitioners now move pursuant to F.R.Crim.P. 41(e) for an order requiring the return of the seized property on the ground that the search warrant was overly broad and violated the Fourth Amendment. I find that the petitioner's contentions are without merit. The requested relief therefore is denied and the petition is dismissed.

The petitioners claim that the search warrant was overbroad in two respects: first, they contend that the warrant improperly permitted search of the office of a lawyer (Sands) without probable cause to believe that the lawyer was personally guilty of any crime; second, the petitioners contend that the warrant described too broadly the property to be seized by including "property of persons associated with NCTC."

### A. Search of Sands' Office

I consider first the contention that the warrant was overbroad because it authorized search of a lawyer's office without probable cause being stated that the lawyer was guilty of any wrongdoing. Assuming without deciding that the latter contention regarding evidence of Sands' guilt is correct, nonetheless the search warrant could properly authorize search of Sands' office because "[t]he critical element in a reasona-

customer lists, personnel files, financial records, banking records including cancelled checks, telephone records, correspondence, mail and telegram records, sales literature, contracts, tape recordings, calendars, diaries, silver bullion and a "Polaroid" type photograph of a middle-aged man seated at a desk on which appears several silver-colored bars.

ble search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 554, 98 S.Ct. 1970, 1977, 56 L.Ed.2d 525 (1978). In this instance, there was ample evidence to give the Magistrate probable cause to believe that evidence of NCTC's guilt would be located in Sands' office.

■ In an affidavit submitted in support of the issuance of the warrant, Special Agent Mackey of the Federal Bureau of Investigation described his investigation of NCTC. The affidavit showed probable cause to believe that NCTC was engaged in illegal "boiler-room" sales of commodity options, in violation of 18 U.S.C. §§ 1341, 1343, 371, and 7 U.S.C. §§ 6b(2)(A), 6b(2)(C), and 6c(a)(3)(C) and that NCTC's illegal boiler room activities were being conducted in many of the rooms in suite 333. This suite of offices had only one name on the outside door, which indicated that the suite contained the law offices of Sands. Agent Mackey's affidavit gave the Magistrate reason to believe that NCTC was involved in a complex illegal scheme "whose existence could be proved only by piecing together many bits of evidence," *see Andresen v. Maryland*, 427 U.S. 463, 481, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v. Brien*, 617 F.2d 299 (1st Cir. 1980).

The evidence before the Magistrate further showed: Sands gave NCTC free office space; Sands' wife was a one-half equity owner of NCTC; Sands dealt with an NCTC customer at Suite 333 on NCTC's behalf and explained the customer's obligations to NCTC under his commodity purchase contract with NCTC; Sands' law library was used by Gharbi for a meeting conducting NCTC business; a room in the suite that contained law books was outfitted with telephones and appeared to be a center of "boiler room" activity.

The foregoing evidence gave more than adequate probable cause to justify the search of suite 333. The question whether or not there was probable cause to believe that Sands himself was guilty of a crime is immaterial.

■ Petitioners' contention that the warrant did not delineate with sufficient "practical accuracy" the area to be searched, *see Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); *United States v. Jackstadt*, 617 F.2d 12 (2d Cir. 1980); *United States v. Bynum*, 386 F.Supp. 449 (S.D.N.Y.1974), is also without merit. The evidence supported the conclusion that the suite was being used generally for the conduct of the business of, and the storage of the records of, the illegal activity. There was nothing suggesting any segregation of the space as between NCTC activities and unrelated activities. To the contrary, Sands' personal connections and association with the NCTC business activities and the disposition of NCTC activity apparently at random throughout suite 333 gave probable cause to believe that evidence of the illegal activity would be found anywhere through the suite.

■ Nor is there merit to the argument that the Magistrate's awareness that Sands was NCTC's counsel should have led to an exclusion of Sands' private office from the area to be searched, in deference to the protection of privileged matter and to protect NCTC's Sixth Amendment rights. Whether or not Sands functioned as the confidential attorney-counsellor to NCTC, it was clear that his connections with NCTC far exceeded such a role. The facts noted above including that Sands' wife was half owner of NCTC, that Sands gave NCTC free office space, that NCTC apparently conducted its business activities throughout the suite designated on the entrance only as Sands' law office, and that Sands personally dealt with NCTC's customers,[2] gave ample cause to believe that

---

**2.** In dealing with NCTC's customer, Sands may have been acting as a lawyer, but not in the protected sense. The fact that he explained

legal matters to the customer would not confer any privilege. Many of the activities normally conducted by lawyers are as agents for their

Sands' office would possess evidence of NCTC's illegal business which derived from roles of Sands having nothing to do with privileges. Furthermore, a criminal enterprise does not exempt itself from a search warrant by conducting its business and keeping its records in its lawyer's office.

### B. *The Items to be Seized*

 The petitioners contend that the warrant was invalid because it did not sufficiently particularize the items to be seized. *See* note 1 *supra* (search warrant). In particular, the petitioners contend that the warrant's authorization to seize "property of NCTC and persons associated with it" unnecessarily impinged upon the Fourth Amendments rights of NCTC employees and others associated with NCTC because it exposed the private property of "associated" persons which had nothing to do with NCTC's business.

Although the warrant is not a model of perfect draftsmanship in this respect, in my view the reasonable meaning of its authorization was that it permitted seizure of matters relating to NCTC's business, and not of matters unrelated to NCTC although belonging to associated persons. There is no indication that the agents conducting the search interpreted it more broadly or seized matters outside the proper scope of the warrant. The reason for the inclusion of the property of "others associated with NCTC" was to avoid the possibility that evidence might escape seizure (or be ruled improperly seized) because some of the activities of NCTC's illegal business might be conducted through associated companies or persons. The warrant was neither intended, nor reasonably construed, to permit a seizure of private property of associated entities or persons unrelated to NCTC's business.

Affidavits and warrants, which are frequently drafted under time pressure, often by police or persons without legal training, and which must frequently express clients in dealings with the outside world and do not involve the lawyer necessarily in privileged confidential communications, much less

complex thoughts, cannot properly be subjected to the same standards of dissection as might befit a criminal statute, an indictment, or a trust indenture.

I find the petitioner's contentions to be without merit. Relief pursuant to F.R. Crim.P. 41(e) is denied in all respects and the petition is dismissed.

SO ORDERED.

in matters related to criminal defense under the Sixth Amendment.