**UNITED STATES of America, Appellant in 81–2838,**

v.

**Howard U. JOHNSON, Appellant in 81–2839.**

**Nos. 81–2838, 81–2839.**

United States Court of Appeals, Third Circuit.

Argued June 8, 1982.

Decided Sept. 30, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1212.

Anthony G. Flynn (Argued), Young, Conaway, Stargatt & Taylor, Wilmington, Del., for Howard U. Johnson.

Peggy L. Ableman (Argued), Theopalis K. Gregory, Asst. U. S. Attys., Joseph J. Farnan, Jr., U. S. Atty., D. Delaware, Wilmington, Del., for United States of America.

Before ADAMS and WEIS, Circuit Judges and BLOCH,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The government appeals from the suppression of evidence obtained by police acting under a search warrant. The district judge found that the warrant was too general, reasoning that the words "a crime" and "a criminal offense" in the printed form failed to limit the search to evidence of a particular violation. After reviewing the warrant as a whole, including the incorporated affidavit, we reverse because we find that the crime under investigation was adequately described. We also dismiss as premature an appeal by the defendant from the district court's refusal to suppress evidence found by fireman while extinguishing a blaze at his home.

The defendant was indicted for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846, and for possession with intent to distribute methamphetamine in violation of § 841(a)(1). He then moved to suppress evidence obtained during two searches of his house. The first was warrantless, and occurred while firemen were combating a fire at the premises. The second took place

---

* The Honorable Alan Bloch, United States District Judge for the Western District of Pennsylvania, sitting by designation.

nearly three weeks later, pursuant to a search warrant. The district court found that the evidence seized on the night of the fire was admissible. The court suppressed the evidence obtained during the second search, however, on the ground that the warrant's generality violated the Fourth Amendment.[1] The government appeals the suppression order under 18 U.S.C. § 3731, and the defendant cross-appeals the court's refusal to suppress the results of the warrantless search.

At 10:25 p.m. on December 26, 1979, the Wilmington Fire Department responded to an alarm at a house in that city. Firemen entered the building to extinguish a blaze in the second-floor front bedroom. They then began "overhauling" the premises, which includes ventilating the house, searching for victims, checking to see if other fires are present, and determining the cause of the blaze. While doing this, the firemen discovered large amounts of what appeared to be drugs in the rear bedroom on the second floor, as well as valuable photographic and electronic equipment in both bedrooms. In the basement, the fire department investigator found what he thought were equipment and chemicals for use in a photographic laboratory.

Police officers began arriving on the scene a few minutes after the alarm. The fire department investigator asked them to take charge of the valuable personal property in the house, since the owner or occupants could not be located. He also showed them the drugs, and accompanied the officers to the basement for an examination of the equipment there. They were unsure about its purpose, and at 11:20 p.m. called in the city's Drug, Vice and Organized Crime Unit.

At approximately 1:00 a.m., members of the drug squad and an agent from the federal Drug Enforcement Agency arrived at the house. They identified the equipment and chemicals in the basement as being a disassembled methamphetamine

laboratory. Two weeks earlier, an informant had told these officers that the defendant was living in the house, and was manufacturing and selling methamphetamine there.

The police tagged and photographed the evidence, and then removed it from the house. All of the investigating officers, and the last of the fire department apparatus, left the scene by approximately 4:15 a.m. Among the items seized were methamphetamine, the laboratory equipment, chemicals, photographs of the defendant, and various papers containing his name.

Officers from the city drug squad conducted a second search of the house on January 14, 1980, pursuant to a warrant issued by a municipal court judge. Additional drugs, papers, laboratory equipment, and photographs were seized at that time.

After an evidentiary hearing, the district judge concluded that a warrant was not needed before firemen entered the house to put out the blaze, and that the drugs were properly seized as being within plain view. The arrival of the narcotics investigators did not cause any greater invasion of privacy than the initial lawful entry by the firemen, and therefore the evidence in the basement was also validly seized. The court suppressed the evidence obtained during the second search, however, because the language in the printed form warrant did not describe the items to be seized with sufficient particularity.

## I

We first meet the jurisdictional issue posed by the defendant's cross-appeal. An order denying a motion to suppress evidence is interlocutory and not appealable. It is a preliminary step to trial, and if error has been committed, it may be rectified on appeal from the final judgment. *Di Bella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); 3 C. Wright, Federal Practice And Procedure § 678 (1969). 18

---

1. The district court's opinion is published at 524 F.Supp. 199 (D.Del.1981). The warrant and supporting affidavit are appended to the district court's opinion. 524 F.Supp. at 208–211.

U.S.C. § 3731 gives the right to appeal suppression orders to the government alone, *United States v. Cahalane,* 560 F.2d 601, 608 (3d Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978), so the defendant's cross-appeal must be dismissed.

Even though this court lacks jurisdiction over the cross-appeal, the defendant argues that we must still pass on the constitutionality of the first search as part of our review of the second. He asserts that the warrant is invalid not only because it is general, but also because the affidavit to show probable cause is tainted by evidence obtained unlawfully on the night of the fire. In particular, the defendant contends that the exigent circumstances which justified the warrantless entry by the first firemen and policemen on the scene do not extend to the later arrival of the drug squad officers and DEA agent.

■ Although in general an appellee may rely on any ground in support of the judgment, *United States v. Cahalane,* 560 F.2d at 608, we conclude that we need not reach his argument on this appeal. It is settled law in this court that, even assuming that some factual averments in the affidavit are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit. *United States v. Sterling,* 369 F.2d 799, 802 (3d Cir. 1966). *See also, Franks v. Delaware,* 438 U.S. 154, 172, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *United States v. Cantor,* 470 F.2d 890, 893 (3d Cir. 1972); *United States v. Eastman,* 465 F.2d 1057, 1059 n.4 (3d Cir. 1972). In *United States v. Howard Christine,* 687 F.2d 749 (3d Cir. 1982), we held that a redaction of improper material from a search warrant is permissible.

■ When the allegedly unlawful evidence in this affidavit is set aside, it still contains ample information to justify the municipal judge in finding probable cause.

The affidavit recites that a large quantity of drugs was found in plain view when police initially entered the house while the fire was in progress, and the defendant concedes that this evidence was lawfully seized. *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

The discovery of the drugs corroborated other information in the affidavit. The Wilmington police officers stated that in mid-December a confidential informant told them that the defendant was living at the house and was manufacturing and selling methamphetamine there. The affiants also stated that DEA agents in Philadelphia advised them that the agency believed the defendant was a large-scale methamphetamine dealer who was known by them to have purchased laboratory equipment in June. Finally, the defendant's neighbors verified that he did live at the house, but had not returned since the fire. These factual averments were sufficient to support a finding of probable cause to issue the warrant.[2] As such, there is no need at this point to decide whether the laboratory equipment in the basement was lawfully seized by the narcotics agents during the first search. We do not mean to suggest that this evidence is tainted; rather, we simply need not and, therefore, will not consider its legality at this time.

## II

This brings us then to the primary issue on the appeal—whether the warrant authorizes a general search. The document is a printed form, with blank spaces to indicate the specific items to be seized. It states in pertinent part:

"You are hereby ordered to search the above named place and/or person(s), with the necessary and proper assistance with-

---

**2.** We need not decide whether the tests set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), or in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d

327 (1959), apply to the informant's tip. The defendant concedes in this court, as he did in the court below, that these facts gave the narcotics investigators "ample probable cause" to obtain a warrant before they entered the house on the night of the fire.

in ten (10) days of the date hereof, for the following evidence which is specified in the annexed affidavit and application, to-wit:

(a) paper, articles or things which are the instruments of a criminal offense and/or designed and/or adapted and/or to be adapted to be used in a criminal perpetration; and/or

(b) property obtained in the commission of a crime; and/or

(c) in particular, *papers that are pertinent in the use in preparing chemicals to use in the manufacturing of illegal drugs, receipts from the purchase of chemicals used in the illegal manufacture of drugs, receipts from the illegal sale of controlled substances. photographs* [sic] *of Howard Johnson, identification of Johnson as well as other associates of Johnson, who may also be involved in the manufacture of controlled substances. which* [sic] are the instruments for and relating to the committing of a crime in violation of Title *16*, Chapter *4752*, Section ___ of the Delaware Revised Code of 1974, serving this warrant and making the search in the *day* time, and if the property be found there, to seize it . . . . ''

(The italics indicate the words that were typewritten on the printed form.)

■ General warrants are prohibited by the Fourth Amendment. In order to prevent the police from undertaking a general, exploratory rummaging through a person's belongings, a warrant must give a "particular description" of the things to be seized. *See Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

■ The trial court recognized that the phrases in a search warrant must be read in context and not in isolation. *See Andresen v. Maryland,* 427 U.S. 463, 479–482, 96 S.Ct. 2737, 2748–2749, 49 L.Ed.2d 627 (1976). Nonetheless, the district judge concluded that sections (a), (b) and (c) should be read independently, because both (a) and (b) are followed by a semicolon and the words "and/or." "Standing alone," the court said,

sections (a) and (b) "are so broad as to authorize a search for anything related to any offense. There is no limitation of the search to evidence or fruit of any particular crime or crimes." 524 F.Supp. at 206.

■ In *Andresen v. Maryland,* 427 U.S. at 479–482, 96 S.Ct. at 2748–2749, the Supreme Court interpreted a broad phrase at the end of a sentence in a warrant as referring only to the crime described earlier in the same sentence. One court has cited *Andresen* as authority for the proposition that "the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." *United States v. Abrams,* 615 F.2d 541, 547 (1st Cir. 1980). Another court has said that "a sufficiently particular qualifying phrase may have the effect of bringing an otherwise 'general' warrant within the constitutional standard . . . ." *United States v. Jacob,* 657 F.2d 49, 52 (4th Cir. 1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653, (1982). Clearly, *Andresen's* most important teaching is that a warrant must be read as a whole. When that approach is taken to the warrant in this case, the necessary particularity appears.

The printed form recites that "the annexed affidavit . . . is incorporated herein by reference." It continues by stating that the magistrate has found probable cause, and directs the police officers to search the defendant's premises "for the following evidence which is specified in the annexed affidavit . . ." Next come sections (a), (b) and (c), with (a) and (b) containing the references to "a" crime that so troubled the district court.

■ Although the general rule is that a particularized affidavit cannot be used to cure a general warrant, there is a recognized exception which applies in this case. When a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant. *Application of Lafayette Academy, Inc.,* 610 F.2d 1, 4 (1st Cir. 1979); *United States v. Johnson,* 541 F.2d

1311, 1315 (8th Cir. 1976). Paragraph 1 of the affidavit does not of itself particularize this warrant because it recites the same subparagraphs (a), (b) and (c) as the warrant itself. However, paragraph 2 of the affidavit explains the meaning of the troublesome references to "a" crime in subparagraphs (a) and (b):

> "2. The offense to which the above property and/or person(s) relate and which affiant's [sic] believe to have been committed ... is *the* crime of *MANUFACTURE OF A SCHEDULE # 2 CONTROLLED SUBSTANCE* as set forth in Title *16*, Chapter *4752*, Section ___ Delaware Revised Code of 1974."

(Emphasis supplied to "the." Italics indicate the words typewritten on the printed form.) "Title 16, Chapter 4752" is the same crime cited in the search warrant.[3]

When the affidavit and the warrant are read together, it becomes apparent that the words "a criminal offense" in subparagraph (a), and "a crime" in subparagraph (b), refer to a specific crime—the manufacture of illegal drugs. This interpretation is reinforced by the list of drug-related articles specified "in particular" in subparagraph (c) of both the affidavit and the warrant. Subparagraph (a) refers to articles or things which are instruments adapted for a criminal perpetration. It is clear from the affidavit in support of the warrant that the criminal enterprise is the manufacture of methamphetamine. Paragraph 3(1) recites that according to an informant defendant manufactured methamphetamine at the address specified in the warrant. There is another statement that defendant purchased laboratory equipment and glassware which could be used in the manufacture of drugs. In addition, one of the affiants referred to the "clandestine laboratory" in the house, "used in the manufacture of metaphetamine and of the chemicals used to make the drug, and the scales."

The articles in subparagraph (a) therefore must be understood to mean those connected with the manufacture of methamphetamine. As such, the warrant is sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty. 2 La Fave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6 (1978).

Less precise descriptions have been found to be valid. For example, in *United States v. Dennis,* 625 F.2d 782, 792 (8th Cir. 1980), a warrant was upheld which called for seizure of "certain books and records (or items of evidence) relating to the extortionate credit transaction business." "Paraphernalia used in the manufacture of counterfeit federal reserve notes" was adequate according to the court of appeals in *Grimaldi v. United States,* 606 F.2d 332, 337 (1st Cir.), *cert. denied,* 444 U.S. 971, 100 S.Ct. 465, 62 L.Ed.2d 386 (1979).

*In re Search Warrant,* 572 F.2d 321 (D.C. Cir.1977), *cert. denied, Founding Church of Scientology v. U.S.,* 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), was concerned with the propriety of a "catch all" description following a detailed list of records. The court sustained the challenged clause which read "[a]ny and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of conspiracy, obstruction of justice and theft of government property [sic] ... which facts recited in the accompanying affidavit make out".[4]

3. As the district judge noted, 524 F.Supp. at 207 n.5, the warrant and the affidavit contain a "typographical error" in that there is no Chapter 4752 of the state code, although there is a Section 4752 which sets forth the designated crime. We attach no significance to this "[m]inor irregularit(y)." *Id. See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

The district judge also observed that the typewritten language in section (c) ends with a period, so that it is unclear whether the printed language which follows it, and which contains the reference to "Title 16, Chapter 4752," is part of section (c) or modifies all three sections. 524 F.Supp. at 206. Again, we think it apparent that the typewritten period is a mechanical error, as shown by the fact that the next word—the printed "which"—is lowercase. This suggests that the warrant itself limited the search to evidence of a specific crime.

4. This case in no way resembles *United States v. Rettig,* 589 F.2d 418 (9th Cir. 1978), where the court struck down an otherwise valid war-

A leading commentator explains that "[s]uch description as 'various instruments and tools used in performing an abortion' and 'instrumentalities of the commission of the crime of conducting an illegal gambling business' have been upheld. This is sound, as the nature of the crime is such that these instrumentalities are reasonably subject to identification, and the in-premises conduct of such illegal activities would make greater particularity impossible.", 2 LaFave, Search and Seizure § 4.6 at 104–05.

Although the language in the form could be improved, read as a whole, the warrant does not authorize a broad and indefinite search but one confined to evidence of a specific crime.

Because the warrant was not general, we conclude that the district court erred in suppressing the evidence obtained in the search of January 14, 1980. Accordingly, the order of the district court will be reversed and the case remanded for further proceedings. The appellee's cross-appeal will be dismissed.

ADAMS, Circuit Judge, concurring.

Although I concur in the opinion of the majority, I write separately to emphasize that I believe that this is a close case, and one with which other courts may differ. As a result of the decision today, law enforcement officials in this Circuit may lawfully use the form warrant that was employed here, provided that the warrant makes clear that the search is limited to a particular crime or set of crimes. As a practical matter, however, law enforcement officials would be well advised to redraft the form warrant to avoid uncertainty as to its scope. Such a precaution would insure that convictions involving evidence obtained under the authority of the form warrant are not jeopardized in the event that a court in the future may view the warrant as does the dissenting opinion in this case.

BLOCH, District Judge, dissenting.

The majority upholds the warrant, read in conjunction with the incorporated affidavit, because it confines the search authorized to evidence of a single crime. I respectfully dissent for two reasons: first, the warrant is too ambiguous to be construed specifically; and, second, *assuming arguendo* that the warrant limits the search to evidence of a single crime, the warrant does not describe with particularity the items to be seized.

Without engaging in a hypertechnical analysis, one can see that the warrant is subject to several interpretations. The trial court, reading paragraph (a) in a common sense fashion, found that the warrant authorized a search for the evidence or fruits of *any* crime. The majority, noting that the warrant is limited by the language of the entire affidavit, would confine the crime under investigation to the manufacture of methamphetamines. While there are several references to methamphetamines in the affidavit, the first paragraph of the affidavit duplicates the warrant, which refers to "illegal *controlled drugs*," "the illegal manufacture of *drugs*," and the "illegal *sale* of *controlled substances*." The second paragraph of the affidavit refers to the crime of manufacture of a Schedule II controlled substance as set forth in the Delaware Revised Code, which would involve the manufacture of any of approximately 30 drugs. The facts listed in the third paragraph of the affidavit include an informant's tip that the defendant was selling methamphetamines. Thus, read as a whole, what the warrant and affidavit seem to authorize is a search for evidence of the manufacture, sale, or possession of any of the 30 controlled substances listed in Schedule II of § 4752, Title 16 of the Delaware Revised Code of 1974.

The problem with this construction of the warrant and the majority's is that it assumes too much. There are *at least* three common sense interpretations of the war-

rant because the agents deliberately failed to advise the magistrate of all the material facts, including the true purpose of the search and its

intended scope. The court obviously was displeased with the agents' questionable tactics.

rant: the trial court's, the majority's and the one set forth in this dissent.[1] A warrant subject to such divergent interpretations can hardly be characterized as leaving nothing to the discretion of the executing officer. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). If the scope of the warrant is uncertain, it allows the executing officer to read it as broadly as he desires—to do precisely what an officer in this particular case suggested, to "go back and see . . . if we missed anything." (Johnson Appendix, p. 105).

The majority cites no case in support of its proposition that a warrant which limits the search to evidence of a single crime is not a general warrant. The majority correctly points out that the Supreme Court upheld a warrant in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), which included a broad phrase permitting a search for what the majority described as evidence of the crime described earlier in the sentence. (Majority opinion, at 64). The majority failed to note that *four* times the Supreme Court identified the crime referred to in the same sentence as "the crime of false pretenses with respect to Lot 13T." 427 U.S. at 480–482, 96 S.Ct. at 2748–2749. *Andresen* can only be consulted for guidance as to whether a warrant, read as a whole, meets the requirement of particularity when the crime is so specifically described that no doubt is left as to the object of the search.

A narrower basis for upholding the warrant would be that the warrant authorizes a search for evidence pertaining to a crime involving illegal drugs. The Supreme Court has implied in *dicta* that a less exacting standard of specificity may be applied to the description of contraband.[2] However, it is unclear whether illegal drugs could be used as a generic description of the items sought in this particular case. In both *United States v. Dennis,* 625 F.2d 782 (8th Cir. 1980) and *Grimaldi v. United States,* 606 F.2d 332 (1st Cir. 1979), which were cited by the majority as upholding less precise descriptions of items sought, the circuit courts indicated that generic descriptions are allowable where "the precise identity of goods cannot be ascertained at the time the warrant is issued." *Dennis,* at 792. *See Grimaldi,* at 338. One cannot seriously contend in the instant case that the officers were unable to ascertain the specific drug sought. Indeed, it is the majority's position that the affidavit clearly identifies the class of drugs as methamphetamines.

The danger in allowing a generic description when the officers know the particular drug sought is best illustrated by the case of *United States v. Rettig,* 589 F.2d 418 (9th Cir. 1978). In the *Rettig* case, Drug Enforcement Agency agents sought a warrant from a federal magistrate to search for cocaine on defendant's premises. When the magistrate refused to issue the search warrant on the ground that the information supplied by the agents was stale, the agents prepared another affidavit and submitted it to a state court judge stating that their purpose was to search for evidence of possession of marijuana by the same defendant. The state judge issued the search warrant, and the agents conveniently found the cocaine while executing it. The Ninth Circuit suppressed all the evidence seized because the agents had interpreted and executed the warrant as "an instrument for conducting a general search." 589 F.2d at 423. To allow agents to describe drugs generically when the agents know the particular drugs sought would allow agents in

---

1. I wholeheartedly agree with Judge Adams' statement in his concurring opinion that this is a matter about which "courts may differ." Indeed, another Delaware federal district court has since held this warrant form invalid, adopting the rationale used by the lower court in this case. *See United States v. Edwin J. Swan,* 545 F.Supp. 799 (D.Del., 1982). In reaching different conclusions as to its validity, the courts may be interpreting the warrant differently.

This is my point: executing officers will also interpret it differently. Thus, it does not prevent them from exercising discretion.

2. *See Stanford v. Texas,* 379 U.S. 476, 486, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965); *Steele v. United States No. 1,* 267 U.S. 498, 504, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); and, *Marcus v. Search Warrant,* 367 U.S. 717, 731, 81 S.Ct. 1708, 1715, 6 L.Ed.2d 1127 (1961).

a *Rettig* situation to subvert the requirements of probable cause as well as particularity.[3]

Though the officers in the instant case did not employ the opprobrious tactics used by the officers in *Rettig* to obtain a warrant, the admitted purpose of the search was to "see . . . if we missed anything." (Johnson Appendix, p. 105). "Anything" cannot be construed as including only methamphetamines and associated paraphernalia because marijuana was also found in the first search. (Johnson Appendix, pp. 98, 301). Thus, the officers were given a license to conduct a general search through issuance of this warrant.

*Assuming arguendo* that the warrant limits the search to evidence of the manufacture of methamphetamines, the items set forth in paragraph (c) do not describe the evidence sought with particularity. The items to be seized as evidence of the *manufacture* of methamphetamines do not constitute contraband *per se* and are not readily distinguishable from ordinary household goods.[4] At least one of the agents involved in the instant investigation had taken a course in identification of equipment used in the manufacture of drugs (Johnson Appendix, p. 157). Given the amount of time the officers had to seek a proper warrant and their knowledge of what they expected to find, there is no reason why the type of papers and equipment sought and the chemicals and drugs involved could not have been specifically identified.

General exploratory searches must not be condoned. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). This Circuit's recent decision of *United States v. Howard Christine,* 687 F.2d 749 (3d Cir. 1982), which permits re-

daction of invalid severable portions of a search warrant, makes it more important than ever that general warrants be identified as such. The court in *Christine* emphasized that the "cost to society of sanctioning the use of general warrants—abhorrence for which gave birth to the Fourth Amendment—is intolerable by any measure." At 758.

---

3. The First Circuit Court of Appeals has formulated a two-point test for determining whether contraband may be described generically, which may avoid the problems posed by *Rettig:* "[F]irst . . . the evidence presented to a magistrate must establish that there is reason to believe that a large collection of similar contraband is present on the premises to be searched, and second, . . . the evidence before the magistrate must explain the method by which the executing agents are to differentiate the contra-

band from the rest of defendant's inventory." *United States v. Cortellesso,* 601 F.2d 28, 31 (1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980). In the instant case, the evidence before the magistrate did not meet either part of the test.

4. In the instant case, the items seized included a measuring cup, a plastic bag, a can of alcohol, and a rubber hose.