560 A.2d 761

COMMONWEALTH of Pennsylvania, Appellant,

v.

William Charles PERSON, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 12, 1988.

Filed April 25, 1989.

Reargument Denied July 7, 1989.

198

Patricia E. Coonahan, Assistant District Attorney, Cheltenham, for Com., appellant.

Andrew F. Schneider, Bensalem, for appellee.

Before ROWLEY, WIEAND and BECK, JJ.

WIEAND, Judge:

Where a fire marshall, while seeking to determine the extent of smoke damage caused by a recently extinguished fire, observes in plain view that which he believes to be drugs and drug paraphernalia and thereafter summons a police officer, may the police officer seize the evidence without first obtaining a search warrant? The trial court held that a search warrant was required and suppressed the evidence which had been observed by the fire marshall and seized by the police officer. The trial court also suppressed additional evidence which had been found and seized in a

later consensual search, holding that the consent given by the resident of the apartment where the fire had occurred was tainted by the illegality of the original search. The Commonwealth has appealed from the trial court's suppression order.[1] We reverse.

Edward M. Momorella, the assistant fire marshall of Upper Moreland, responded to a fire call at premises 2009B Jason Drive, Huntingdon Valley, in Montgomery County. He arrived after the fire had been extinguished by firemen. He determined that the fire had originated accidentally in a plastic covered chair, which had been removed from the apartment complex and was smoldering on the lawn. Momorella then entered the apartment to observe where the chair had been situated. He confirmed that the chair had been the source of the fire and examined the interior of the apartment to determine the extent of the damage which had been caused by fire and smoke. He observed that the apartment was ventilating, with windows open, and that only a small amount of soot was on the apartment walls. Upon examining two bedrooms for possible smoke damage, Momorella observed a marble slab, a scale, a plastic bag containing a white, powdery residue, and a bag containing green matter. Upon emerging from the apartment, he told Officer McGowen of the Upper Moreland Police Department, who was outside the apartment, about that which he had observed in the bedroom and said that he would like McGowen to see it. Thereafter, McGowen entered the apartment bedroom, where he observed a bag of marijuana, a triple beam scale, a razor, a mirror and plastic bags. The discovery was reported to Sgt. Levy, who was at the station, and he was summoned to the scene of the fire. Shortly thereafter, the defendant, William C. Person, and his girlfriend returned from a shopping trip and identified themselves as the occupants of the apartment. They were

1. The Commonwealth may only appeal from a trial court's order suppressing evidence when it certifies in good faith that the suppression order will terminate or substantially handicap its prosecution of the case. See: *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985). In the instant case, it is clear that the suppression order will substantially handicap the Commonwealth's prosecution.

confronted by Sgt. Levy, who told them of the observations made by McGowen and Momorella, said that they wanted to search the apartment further, and that if the occupants didn't consent, a search warrant would be obtained. Person consented to a further search. He also showed police where additional drugs were stored. As a result, police seized from a dresser drawer methamphetamine, marijuana, pills, and drug paraphernalia. Person and his girlfriend were placed under arrest.[2]

In reviewing an appeal taken by the Commonwealth from an order suppressing evidence,

> we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983). Furthermore, our scope of appellate review is limited primarily to questions of law. *See Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986). We are bound by the suppression court's findings of fact if those findings are supported by the record. *Id.* Factual findings wholly lacking in evidence, however, may be rejected. *Id.*

*Commonwealth v. Stine*, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988). See also: *Commonwealth v. James*, 506 Pa. 526, 532–533, 486 A.2d 376, 379 (1985); *Commonwealth v. Hamlin*, 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983).

The United States Supreme Court has twice, within the context of prosecutions for arson, considered the authority of fire department officials to conduct warrantless investigations at the scene of a fire. In *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Court said:

> A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before enter-

---

2. It was subsequently determined that all items seized belonged to Person, and charges against the girlfriend were dropped.

ing a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–466, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564 [1971].

. . . .

Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

*Id.* at 509–510, 98 S.Ct. at 1950, 56 L.Ed.2d at 498–499 (footnote omitted). Six years later, in *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984), the Supreme Court limited its holding in *Tyler* as follows:

Where, however, reasonable expectations of privacy remain in the fire-damaged property, additional investigations begun after the fire has been extinguished and fire and police officials have left the scene, generally must be made pursuant to a warrant or the identification of some new exigency.

The aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or to secure the owner's consent to inspect fire-damaged premises. Because determining the cause and origin of a

fire serves a compelling public interest, the warrant requirement does not apply in such cases.

. . . .

The object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined. If, for example, the administrative search is justified by the immediate need to ensure against rekindling, the scope of the search may be no broader than reasonably necessary to achieve its end. A search to gather evidence of criminal activity not in plain view must be made pursuant to a criminal warrant upon a traditional showing of probable cause.

*Id.* at 293–295, 104 S.Ct. at 647, 78 L.Ed.2d at 484–485 (1984) (footnotes omitted).

In *Commonwealth v. Smith*, 511 Pa. 36, 511 A.2d 796 (1986), *cert. denied*, 479 U.S. 1006, 107 S.Ct. 643, 93 L.Ed.2d 700 (1986), the Supreme Court of Pennsylvania, also in the context of an arson prosecution, was called upon to interpret the *Tyler* and *Clifford* decisions. In doing so, the Court said:

Reading *Tyler* and *Clifford* together, certain principles regarding the Fourth Amendment and investigations of the causes and origins of fire are clear. Firemen have the right to enter a private residence without a warrant without violating the Fourth and Fourteenth Amendments of the United States Constitution, if done so for the purpose of extinguishing a fire. While performing the task, firemen may seize any evidence, which is in plain view, of the cause and origin of the fire. In fighting the fire, fire officials are also immediately charged with determining the cause and origin of the fire. The purposes of the investigation into the cause and origin of the fire may properly include prevention of the rekindling of the fire, and prevention of the destruction of evidence, either accidentally or intentionally. When the search is conduct-

ed for one of these purposes, no search warrant is necessary, even if consent has not been granted, but only if the search is a continuation of an initial entry. If the nonconsenting, warrantless entry is begun, but must be terminated due to the condition of the building, then that search may be continued at the first instance reentry is possible. Finally, if it is clearly shown that the search is not for the purpose of determining the cause and origin of the fire, but rather to obtain evidence of criminal activity, then such search must either be with consent or with a valid search warrant.

*Commonwealth v. Smith, supra,* 511 Pa. at 45–46, 511 A.2d at 800–801.

In the instant case, the purpose of the assistant fire marshall's search was not to uncover evidence of criminal activity but to determine the cause of the fire and to determine the extent of the damage which had been caused by the fire. In carrying out his examination, the fire marshall determined that the source of the fire, indeed, had been the chair which had been removed from the living room. He then proceeded to check the bedrooms for smoke damage. It was during the check of the second bedroom that the drugs and paraphernalia were observed in plain view. The suppression court, relying on *Commonwealth v. Smith, supra,* concluded that "in Pennsylvania a fire marshall is allowed to seize evidence of arson while investigating the *cause or origin* of the fire and may supply information to police regarding 'plain view' evidence of [other] criminal activity." The court determined, however, that "at present, there is no authority in Pennsylvania to allow a fire marshall to seize evidence [of] non-arson related criminal activity." Thus, in suppressing the evidence, even though it had been observed in plain view, the suppression court reasoned as follows:

Because in the instant case the exigency had been removed and the source and origin of the fire had been *determined* and *removed,* a warrant to search the apartment was necessary even though a fire marshall's admin-

istrative investigation of the extent of smoke damage from the fire had uncovered illegal contraband in "plain view." The only value of the investigation of the fire for smoke damage was to provide material for a regular report and not to prove criminality. Coincidentally, the view provided sufficient information for an affidavit of probable cause to obtain a search warrant either for the police on information received or by an affidavit by the fire marshall on behalf of the police's request for a search warrant.

. . . .

Therefore, when the fire marshall was lawfully present on the premises for an administrative search and survey of the smoke damage, the non-arson source and sole object containing fire having been removed, the fire marshall should have reported to the police what he saw "in plain view" without allowing the police to search illegally and thereafter requiring the police to obtain a search warrant on information received from the marshall. This would have been sufficient probable cause for an affidavit to obtain a search warrant. Once it was obtained, then a thorough search of the apartment both of "plain view" objects and those "not in plain view" was proper. The legitimacy of the search would be then unquestioned and consent would not have been an issue.

While the appellate courts in this Commonwealth have not determined whether a fireman can seize evidence of non-arson related crimes which he *finds in plain view* during the performance of legitimate firefighting duties, other courts which have considered this issue have refused to suppress evidence thus seized. See: *United States v. Green,* 474 F.2d 1385 (5th Cir.1973), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973); *United States v. Johnson,* 524 F.Supp. 199 (D.Del.1981), *rev'd on other grounds,* 690 F.2d 60 (3d Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983); *State v. Bell,* 108 Wash.2d 193, 737 P.2d 254 (1987). See generally An-

not., *Admissibility, in Criminal Case, of Evidence Discovered by Warrantless Search in Connection with Fire Investigation—Post–Tyler Cases*, 31 A.L.R.4th 194 (1984). But see: *United States v. Hoffman*, 607 F.2d 280 (9th Cir.1979). Cf. *United States v. Parr*, 716 F.2d 796 (11th Cir.1983) (search by firemen to protect valuables from looters in aftermath of a fire did not constitute a sufficient exigency to justify the warrantless seizure of evidence which was not in plain view).

In *United States v. Johnson, supra,* the United States District Court in Delaware refused to suppress drugs and paraphernalia, as well as various papers bearing the defendant's name, which had been found by firefighters during the performance of their normal duties in the aftermath of a fire. In holding that the warrantless seizure of such evidence was proper, the court reasoned as follows:

A warrantless search is per se unreasonable under the fourth amendment. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The government bears the burden of establishing that the challenged search fell within one of the carefully delineated exceptions to the warrant requirement of the fourth amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *Katz v. United States, supra,* 389 U.S. at 357, 88 S.Ct. at 514. Here the government contends that the exigency of the fire justified the warrantless search of the premises on December 26, 1979, and that evidence was then seized in plain view, in compliance with the fourth amendment.

A burning building presents an exigency of sufficient proportions to render a warrantless entry reasonable. *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Steigler v. Anderson*, 496 F.2d 793, 795 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *United States v. Green*, 474 F.2d 1385, 1389 (5th Cir.), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973). In this case, no one disputes the fact that the firemen's entry of the house

was for the sole purpose of extinguishing the fire in the second floor bedroom. They did not need a warrant for this entry, nor did they need a warrant to conduct the routine procedures of searching for and rescuing occupants, ventilating the building, searching for any additional fires, and securing the premises. *Steigler v. Anderson, supra,* at 795. In addition, Firefighter Wilson's warrantless investigation of the cause of the fire was reasonable and justified by exigent circumstances. *Id.* at 797.

Once the firemen were legitimately on the premises carrying out their proper firefighting functions, any evidence they inadvertently saw in plain view could be seized without a warrant. *See Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The firemen's discovery of what appeared to be drugs and drug paraphernalia in the second floor rear bedroom clearly falls within this exception, because the incriminatory nature of the evidence was apparent and their discovery was inadvertent. *Coolidge v. New Hampshire, supra,* at 466, 469–70, 91 S.Ct. at 2022, 2040. The seizure of various papers with Johnson's name on them was reasonable under the same rationale.

*Id.* at 203–204.

It has been held also that after a fireman has lawfully observed evidence in plain view, he may summon a policeman to seize the evidence without first obtaining a warrant. See: *United States v. Green, supra.* See also: *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.1974), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *United States v. Johnson, supra; State v. Bell, supra.* Contra: *United States v. Hoffman, supra.* In *United States v. Green, supra,* a deputy state fire marshall for the City of Jacksonville, Florida, had found plates used for the counterfeiting of currency while he was investigating the cause of a fire. After making this discovery, the deputy fire marshall sum-

moned a Secret Service agent to confirm that the plates were, in fact, used for counterfeiting and to take custody of them. In upholding the warrantless entry and the seizure of the plates by the Secret Service agent, the United States Court of Appeals for the Fifth Circuit reasoned:

> The purpose of a search warrant is to ensure judicial authorization, in advance, of intrusions into constitutionally protected privacy. Where a lawful intrusion has already occurred and a seizure by a State officer has validly taken place as a result of that intrusion, the invasion of privacy is not increased by an additional officer, albeit a federal officer, who is expert in identifying the type of contraband discovered, to enter the premises to confirm the belief of the State officer and to take custody of the evidence. Once the privacy of a dwelling has been lawfully invaded, to require a second officer from another law enforcement agency arriving on the scene of a valid seizure to secure a warrant before he enters the premises to confirm that the seized evidence is contraband and to take custody of it is just as senseless as requiring an officer to interrupt a lawful search to stop and procure a warrant for evidence he has already inadvertently found and seized. *Terry v. Ohio*, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Harris v. United States*, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 1067. The apparent conflict between the Constitution and common sense which the plain view doctrine has reconciled is the same misconception which we here seek to dispel. *See Mapp v. Ohio*, 1961, 367 U.S. 643, 647, 81 S.Ct. 1684 [1687], 6 L.Ed.2d 1081.

*United States v. Green, supra* at 1390.

The Supreme Court of Washington, in *State v. Bell, supra,* considered a case which the suppression court conceded "factually is closest to the instant case." In *Bell,* firefighters had been summoned to the scene of a fire and had removed from a house a woodstove which appeared to be the cause of the fire. Thereafter, the firefighters checked the attic, which was located directly above where

the woodstove had been, to make certain that there were no smoldering embers. In checking the attic, the firefighters determined that the area above the woodstove was no longer burning but that it had been charred. They then observed, in plain view, what they believed to be marijuana plants. The firefighters summoned an assistant fire marshall to the scene, who then contacted a deputy prosecutor and was advised to confiscate the plants. A deputy sheriff was summoned to assist; and, thereafter, sheriff's officers and firemen removed the plants from the house. The defendant moved for the suppression of the plants which had been removed, arguing that a warrant had been necessary because exigent circumstances had not been present, i.e., the fire had already been extinguished. He also argued that the sheriff's officers needed a warrant to enter the house to assist in the seizure. In upholding the warrantless search and seizure, the Supreme Court of Washington reasoned as follows:

Fire fighters, like policemen, are subject to the Fourth Amendment. *Michigan v. Tyler*, 436 U.S. 499, 504, 508, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978). Therefore, fire fighters' warrantless seizures of property found at the scene of a fire are per se unreasonable unless the State can show that they fall within one of the exceptions to the warrant requirement. *See Tyler*, at 508–09, 98 S.Ct. at 1949.

The fire fighters' role in this case is justified by the "plain view" exception to the warrant requirement. A "plain view" seizure is valid if the following requirements are met: "(1) a prior justification for intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the officer that he had evidence before him." [*State v.*] *Myrick*, 102 Wash.2d [506] at 514, 688 P.2d 151 [1984] (quoting [*State v.*] *Chrisman*, 100 Wash.2d [814] at 819, 676 P.2d 419 [1984]). We now turn to analysis of those elements.

There was a prior justification for the fire fighters' original intrusion into the attic. "A burning building of course creates an exigency that justifies a warrantless

entry by fire officials to fight the blaze." *Michigan v. Clifford,* 464 U.S. 287, 293, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984). Moreover, exigent circumstances continue beyond the time when the fire has been extinguished. *Tyler,* 436 U.S. at 510, 98 S.Ct. at 1950. Fire fighters need no warrant to remain in the building a reasonable time to make sure that the fire does not rekindle, to search for additional fires, and to ventilate the building. *Clifford,* 464 U.S. at 293 n. 4, 104 S.Ct. 647, n. 4; *Steigler v. Anderson,* 496 F.2d 793, 795–96 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *State v. Olsen,* 282 N.W.2d 528, 531 (Minn.1979). Bell's attorney even concedes that the fire fighters "were permitted to be where they were when they found the plants." Thus, exigent circumstances justify the fire fighters' presence not only in Bell's residence but also in his attic.

The discovery was also inadvertent. The fire fighters had the duty to ensure the fire was fully extinguished and would not rekindle. The fire fighters had to check the attic's condition because the wall beneath it had been burned up to the ceiling. The duty to investigate became even more compelling when they saw the extent of the smoke in the attic. The fire fighters had not exceeded the scope of these duties when they happened upon the marijuana-growing operation.

Finally, the fire fighters were immediately aware that they had evidence before them. The purpose of this immediate knowledge requirement is so that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The fire fighters did not engage in this type of extended search. All that is required to satisfy the "immediate knowledge" element is a reasonable belief that evidence is present. *State v. Lair,* 95 Wash.2d 706, 716–17, 630 P.2d 427 (1981); *State v. Claflin,* 38 Wash.App. 847, 853, 690 P.2d 1186 (1984), *review denied,* 103 Wash.2d 1014 (1985). One of the two fire

fighters who first entered the attic testified that "I suspected that [the plants] were—chances are they were marijuana." The assistant marshal testified that "[t]his appeared to be a marijuana-growing operation to me." The third element is met in the present case.

Bell contends, however, that we should hold the present seizure unconstitutional because there was plenty of time to obtain a search warrant after the operation was discovered. Bell argues that warrantless seizures should be held constitutional only if exigent circumstances exist throughout the duration of the search and seizure. Courts in this state, however, have time and again recognized that exigency is not a necessary element to a "plain view" seizure. *State v. Lair,* 95 Wash.2d at 716, 630 P.2d 427; *State v. Marchand,* 37 Wash.App. 741, 749, 684 P.2d 1306 (1984), *rev'd on other grounds,* 104 Wash.2d 434, 706 P.2d 225 (1985); *State v. Johnson,* 17 Wash.App. 153, 159, 561 P.2d 701, *review denied,* 89 Wash.2d 1001 (1977). A search can be upheld under the plain view doctrine in the absence of exigent circumstances, as long as the doctrine's first element is satisfied. *Lair,* 95 Wash.2d at 716, 630 P.2d 427. In other words, exigent circumstances are merely one factor to be considered in determining if the seizing officers' intrusion was justified. *Lair,* at 716, 630 P.2d 427.

. . . .

Bell next argues that the sheriff's officers needed a warrant to enter the residence and to seize the property found by the fire fighters because they constituted a separate state agency. A handful of Fourth Amendment cases have analyzed this issue. The majority of those cases holds that the warrant is not needed because the defendant no longer has a reasonable expectation of privacy for that area of the residence where one officer is already present. *See United States v. Green,* 474 F.2d 1385 (5th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973) (warrant not necessary when secret service agent entered residence to take custody of coun-

terfeiting plates found by deputy fire marshal investigating the cause of a fire); *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974) (warrant not necessary when police officers seized evidence of arson found by a deputy fire marshal during a warrantless investigation which occurred during and immediately after a fire was extinguished); *United States v. Gargotto,* 476 F.2d 1009 (6th Cir.1973) (warrant not necessary when records of betting activity were microfilmed by IRS agents 2 days after they had been seized by an arson investigator and a police officer); *United States v. Brand,* 556 F.2d 1312 (5th Cir.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978) (no warrant required when police officers entered house after another police officer had helped handle an emergency drug overdose and the second group of police officers observed evidence which formed the basis for a subsequent search warrant).

The only case supporting Bell's position that the second agency needs a warrant is *United States v. Hoffman,* 607 F.2d 280 (9th Cir.1979). *Hoffman* conflicts directly with the majority of the cases in that it holds that a reasonable expectation of privacy remains in areas where fire fighters have entered. "[N]o citizen should reasonably expect that ... any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion." *Hoffman,* at 285.

We find the rationale of the majority cases persuasive and we reject the *Hoffman* analysis. Once the privacy of the residence has been lawfully invaded, it is senseless to require a warrant for others to enter and complete what those already on the scene would be justified in doing. *See Green,* at 1390; *Steigler,* at 798. We hold that where firefighters have lawfully discovered evidence of criminal activity under the plain view doctrine, it is not necessary for sheriff's officers to obtain a warrant before entering a residence to seize the evidence.

There are, of course, limits on the actions of the police. When the police enter the residence, they are not allowed

to exceed the scope of the fire fighters' earlier intrusion. *See Green,* at 1390. In essence, they step into the shoes of the fire fighters. They cannot enter any area that the fire fighters were not justified in entering, nor seize any evidence that the fire fighters were not justified in seizing. In the present case, the sheriff's deputies did not exceed their permitted scope of activity. They entered the residence, seized the property already discovered by the fire fighters, and did no more. Their warrantless seizure was valid under the Fourth Amendment.

*State v. Bell, supra* 108 Wash.2d at 196–201, 737 P.2d at 257–260 (footnotes omitted).

■ We are persuaded by the rationale of the Washington Supreme Court. Therefore, we hold that the evidence in the instant case, which had been observed in plain view by an assistant fire marshall who was on the premises performing a task within the scope of his duties,[3] and which had been seized by a police officer summoned by the fire marshall, was properly seized without a warrant. Upon

**3.** Section 3104 of the Second Class County Code, which defines the duties and powers of a fire marshall or his assistants, specifically authorizes the ascertainment of the nature and value of the property damaged or destroyed in a fire. This section provides:

> The fire marshal or one of his assistants shall attend, if practicable, all fires occurring in the county, and shall endeavor to save and protect from the fire all property in danger therefrom and to protect such property from loss by pillage and theft and from injury and destruction in any manner, and he shall have power to take any measures he may deem proper and expedient for that purpose, and he shall also have power to call upon any constable, policeman or citizen of any city, ward, borough or township in the county to aid and assist him in protecting and saving property, as aforesaid, and to aid and assist in carrying into execution any measures he may deem proper and expedient, as aforesaid, and he shall investigate and, if possible, ascertain the origin and cause of every fire occurring in the county, the nature and value of the property injured or destroyed thereby, whether said property was insured or not, and if insured, the amount of such insurance, by whom effected, for whose benefit and by whom the risk was taken, the names and places of residence of the owner or owners and of all parties interested in the property injured or destroyed and the nature and amount of such interest.

Act of July 28, 1953, P.L. 723, art. XXXI, § 3104, 16 P.S. § 6104. Montgomery County is classified as a Second Class (A) County.

discovering the evidence in plain view, the fire marshall would himself have been justified in seizing the evidence. That he summoned a policeman to seize the evidence did not require the obtaining of a warrant, so long as the policeman did not extend the scope of the search. The policeman stood in the shoes of the fire marshall and could seize that which the marshall could have seized.

Our holding is narrow. We do not hold, as the author of the dissenting opinion has suggested, that fire or police personnel may, in the aftermath of a fire, "rummage" through an unburned apartment or conduct therein a general warrantless search in the hope of finding evidence of criminal activity. Such a search is precluded by the Fourth Amendment. We hold only that a fireman or fire marshall, who is properly inside premises in the course of his firefighting duties and responsibilities, may seize contraband or evidence of criminal activity other than arson which he inadvertently observes in plain view. Further, when contraband is observed in plain view by a fire marshall who is properly on the premises, he may summon a police officer who may observe and seize the contraband without a warrant.

In this case, there was no general search of appellee's apartment. The fire marshall, who was lawfully in appellee's apartment because of a fire, inadvertently observed in plain view that which he believed to be contraband. He thereupon summoned a police officer to confirm his belief and seize the drugs and drug paraphernalia. It was only after the defendant-appellee, who had been shopping, returned home, was confronted with the fire marshall's observations, and consented to a further search of the apartment, that additional evidence was found and seized. Indeed, it was appellee who then led the police to the additional evidence, and no further search was conducted.[4] It is these circumstances alone which are before this Court and upon which today's holding is based.

4. It was Officer McGowan who was initially summoned by assistant fire marshall Momorella to observe the drugs which Momorella had

The "plain view" doctrine is not dependent upon the existence of statutory authority to make searches or seize evidence of crime. If it were, then the absence of statutory authority in Pennsylvania would preclude the seizure by firemen of any evidence of crime from the site of a fire, whether the evidence was pertinent to arson or some other crime. This is contrary to the law in this Commonwealth. See: *Commonwealth v. Smith, supra* (firemen may seize evidence of arson found in plain view while investigating the cause and origin of a fire). The absence of express statutory authority to seize evidence of crime, moreover, would not be an adequate basis for the suppression of evidence. Cf. *Commonwealth v. Morgan,* 517 Pa. 93, 96 n. 2, 534 A.2d 1054, 1056 n. 2 (1987) (suppression of evidence is not appropriate remedy for violation of every rule of criminal procedure dealing with searches and seizures; rather, suppression is warranted only where fundamental constitutional rights have been implicated, the police have acted in bad faith, or the defendant has suffered substantial prejudice); *Commonwealth v. Mason,* 507 Pa. 396, 406–407, 490 A.2d 421, 426 (1985) (same). See also: *Commonwealth v. Corley,* 507 Pa. 540, 552, 491 A.2d 829, 835 (1985) (Larsen, J. concurring) ("the exclusionary rule will not be extended to areas where its application would not tend to achieve its primary purpose of deterring unlawful police conduct."). It is only where a defendant's constitutional right to be free of unreasonable searches and seizures has been violated that suppression is required. There is no such violation where

observed in plain view. Officer McGowan then contacted his supervisor, Sgt. Levy, who also entered appellee's apartment for the purpose of observing the same evidence which had been discovered in plain view. The dissenting opinion states that an Officer DiSonni also entered appellee's apartment. The testimony at the suppression hearing disclosed only that Officer DiSonni was present at the scene of the fire and it is not clear that DiSonni actually entered appellee's apartment. What is clear from the suppression hearing testimony, however, is that no general search was conducted by the police of appellee's apartment. Rather, Officer McGowan and Sgt. Levy limited their activity to observing and seizing the evidence which had been discovered in plain view, until such time as appellee returned home, consented to a further search, and actually led police to the additional evidence.

evidence of crime is inadvertently observed in plain view by a representative of the government who is lawfully in a position from which to make such observation. See: *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 568–570, 490 A.2d 923, 926–927 (1985) (discussing requirements of plain view doctrine). See also: *Commonwealth v. Pine*, 370 Pa.Super. 410, 419, 536 A.2d 811, 816 (1988); *Commonwealth v. Casuccio*, 308 Pa.Super. 450, 468, 454 A.2d 621, 630 (1982).

■ Having concluded that the evidence in plain view was properly seized, we also reject the suppression court's conclusion that the evidence found in the later consensual search was the fruit of a poisonous tree. Accordingly, the suppression order will be reversed.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

BECK, J., files a concurring and dissenting opinion.

BECK, Judge, concurring and dissenting:

We deal in this case with a series of invasions of the home which culminated in the warrantless seizure of evidence. The trial court suppressed this evidence as a fruit of an illegal search of a private residence. I would affirm the trial court's suppression order.

On May 5, 1987, Edward F. Momorella, the assistant fire marshal[1] of Upper Moreland Township, responded to a report of a small fire in an apartment complex in Huntingdon Valley, Montgomery County. By the time Momorella arrived on the scene, the blaze had been extinguished by firemen. Momorella determined that the fire had originated in a foam rubber chair in the living room of a three room apartment rented by William Person, and that the fire had been caused by careless smoking. Momorella first inspected the living room, and then examined the other rooms of

---

1. Assistant fire marshals have the same powers and perform the same duties as fire marshals. Pa.Stat.Ann. tit. 16, § 6101 (Purdon 1956). I refer to Momorella as a fire marshal throughout this opinion for the sake of simplicity.

the apartment in order to ensure proper ventilation and to ascertain the extent of smoke damage. In one of the bedrooms, he observed what he believed to be controlled substances and drug paraphernalia. After viewing this evidence, he summoned Officer John McGowan of the Montgomery County Police who entered the apartment without first obtaining a search warrant. McGowan then notified his superior, Sergeant Alex Levy, who entered the apartment without first obtaining a search warrant. At some point, Mark DiSonni, another uniformed police officer, also entered the apartment without first obtaining a search warrant. When Mr. Person arrived home and entered his apartment, he was greeted by a policeman who placed him under arrest. Person admitted that he owned the controlled substances and drug paraphernalia, and these effects were then seized by police officers.

I agree with the majority that the fire marshal's inspection of the apartment did not violate the fourth amendment. I disagree with the majority's conclusion that the subsequent warrantless searches and seizures by police officers did not violate the fourth amendment.[2]

## I. LEGAL SEARCH BY FIRE MARSHAL

At the very heart of the fourth amendment is a concern for the privacy of the home. A resident's privacy interest in his home is so substantial that any warrantless, nonconsensual entry into the home by an agent of the government is ordinarily deemed to be an unreasonable search. *See Payton v. New York*, 445 U.S. 573, 586–590, 100 S.Ct. 1371, 1380–1382, 63 L.Ed.2d 639 (1980). No warrant is required, however, where government agents are confronted with exigent circumstances, such as a raging fire. No one could

---

**2.** In his opinion justifying the suppression of evidence as the fruit of an unreasonable search and seizure, the trial court did not refer to the Pennsylvania Constitution. We must presume that the trial court suppressed the evidence on the basis of the federal constitution. The applicability of the fourth amendment's protection against unreasonable searches and seizures to the facts of the instant case is the only issue presently before us. *See Commonwealth v. Toanone*, 381 Pa.Super. 336, 342–344, 553 A.2d 998, 1000–1001 (1989).

reasonably argue that firemen must consult a magistrate before entering a burning building to put out a blaze. *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978). Moreover, the exigency created by a fire does not dissipate the moment the flames are extinguished. Fire fighters have a compelling interest in searching fire-damaged premises in order to ensure that the fire does not rekindle and in order to prevent the destruction of evidence. *Michigan v. Clifford,* 464 U.S. 287, 293, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984). Thus, it is well established that in the immediate aftermath of a fire, fire fighters may thoroughly investigate the cause and origin of the fire without first securing a warrant. *Commonwealth v. Smith,* 511 Pa. 36, 44–46, 511 A.2d 796, 800–801, *cert. denied,* 479 U.S. 1006, 107 S.Ct. 643, 93 L.Ed.2d 700 (1986).

Appellee Person concedes that the firemen did not violate his constitutional rights when they entered his apartment to put out a fire. Person also concedes that Fire Marshal Momorella did not violate his constitutional rights when he entered the living room to find the cause and origin of the fire. Person's claim is that Momorella had no right to enter the bedroom after the cause and origin of the fire already had been discovered. I disagree. According to Momorella's uncontradicted testimony at the suppression hearing, he "proceeded to check out the rest of the apartment for smoke damage, and the amount of smoke *to see if the fire department had ventilated.*" R.R. at 5 (emphasis added). This search was proper. Among the gravest dangers created by a fire is the risk that residents will become ill after inhaling smoke or other noxious fumes. The fire department has as compelling an interest in ensuring proper ventilation as in preventing a fire from rekindling. I therefore conclude that a fire marshal has not only a right but also an obligation to enter any portion of a residence which may be congested with smoke. Moreover, since Momorella could lawfully enter the bedrooms to check the ventilation, he could also take the opportunity to survey the extent of smoke damage.

My disagreement with the majority concerns whether a fire marshal may conduct a warrantless search which bears no relation to his efforts to determine the cause and origin of a fire or to address a potential danger to public health. The majority would apparently allow the admission into evidence of any items discovered by a fire marshal who was "performing a task within the scope of his duties." Majority Op. at 769. As the majority notes, a fire marshal's duties include determining the nature and value of the property destroyed by a fire and whether such property was insured. Pa.Stat.Ann. tit. 16, § 6104. Thus, under the majority's formulation, following a small fire in a basement, a fire marshal could rummage through the papers in a homeowner's bedroom desk in the hope of finding fire insurance policies or sales receipts for damaged merchandise. This would be an unprecedented interference with the homeowner's right to privacy.[3]

I would therefore hold that a fire marshal may conduct a warrantless search to determine the extent of smoke damage when the search is part of a broader effort to discover the cause and origin of the fire or to safeguard public health and when the search takes place within a reasonable period of time after the blaze is extinguished. I would not allow a fire marshal to conduct a warrantless search of any portion of the fire-damaged premises solely in order to

3. A careful examination of the cases relied upon by the majority indicates that the evidence admitted was discovered by fire fighters who were investigating the cause and origin of a fire, ventilating the premises, rescuing trapped occupants, or taking action necessary to prevent a fire from rekindling, such as shutting off utilities or searching for smoldering embers. On the other hand, in *United States v. Parr*, 716 F.2d 796 (11th Cir.1983), the court suppressed evidence that a fireman discovered while attempting to secure valuables against looters. The *Parr* court reasoned that preventing the theft of valuables from fire-damaged premises was not a core firefighting function, and that a warrantless search conducted for this purpose was illegal, at least in the absence of standardized procedures which narrowly channeled the discretion of fire officials. The issue in *Parr* is a difficult one since it might be argued that preventing the theft of valuables serves an important public interest and requires immediate action. No immediate action is required when the sole purpose of a search is to ascertain the extent of smoke damage for insurance purposes.

determine the nature and value of the property destroyed. If a fire marshal needs to determine how much property was destroyed, he may proceed to search after obtaining either the consent of the resident or an administrative warrant. *See Michigan v. Clifford,* 464 U.S. at 291–92, 104 S.Ct. at 645–46 (requiring administrative warrants for inspections by fire officials in absence of exigent circumstances). *See generally Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (discussing administrative warrants).

## II. ILLEGAL SEARCH BY POLICE

Although my reasoning differs from that of the majority, I agree that Fire Marshall Momorella's search of appellee's apartment was constitutional. The same cannot be said for the subsequent invasion of the apartment by Officer McGowan, Sergeant Levy, and Officer DiSonni. Unlike the fire marshal, the police could not rely on any exigent circumstance to justify their warrantless search of the apartment and seizure of contraband. This is not a case in which a fireman requested that the police assist him in investigating the cause and origin of a fire. Nor is this a case in which a fireman required police assistance in order to dispose of potentially explosive chemicals discovered during a post-fire inspection. *See United States v. Urban,* 710 F.2d 276 (6th Cir.1983); *United States v. Callabrass,* 607 F.2d 559 (2nd Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). Here, a fire marshal who had completed his investigation of the cause and origin of the fire came across a small amount a marijuana and some drug paraphernalia. These materials posed no immediate danger. The police had ample opportunity to secure a warrant before entering the apartment to seize the contraband. The trial court correctly held that their failure to do so requires suppression of the evidence.

It is of course true that under our fourth amendment jurisprudence, a defendant cannot object to a warrantless police entry of an area in which he does not have a legit-

imate expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A legitimate expectation of privacy exists where an individual exhibits a subjective expectation of privacy that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 360–62, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). In *Michigan v. Tyler*, the United States Supreme Court noted:

> [The] proposition—that innocent fire victims invariably have no protectible expectations of privacy in whatever remains of their property—is contrary to common experience. People may go on living in their homes or working in their offices after a fire. Even when that is impossible, private effects often remain in the fire damaged premises.

*Id.*, 436 U.S. at 505, 98 S.Ct. at 1948. Thus, although a devastating fire that reduces a building to ash and rubble might destroy any privacy interest therein, a resident will continue to enjoy a legitimate expectation of privacy in his home in the aftermath of a small fire that is easily contained. *See Michigan v. Clifford*, 464 U.S. at 292–93, 104 S.Ct. at 646–47; *Commonwealth v. Ellis*, 379 Pa.Super. 337, 345–346, 549 A.2d 1323, 1327 (1988).

It is undisputed that the fire in this case did not destroy Mr. Person's legitimate expectation of privacy in his apartment. Therefore, the constitutionality of any post-fire search of the apartment would depend upon whether the purpose of the search was related to the exigency cause by the fire. *See Michigan v. Clifford*, 464 U.S. at 292, 104 S.Ct. at 646. If the search is a direct response to the exigency created by the fire, a resident's interest in privacy must yield to the compelling interests of the state. On the other hand, "if it is clearly shown that the search is not for the purpose of determining the cause and origin of the fire, but rather to obtain evidence of criminal activity, then such search must either be with consent or with a warrant." *Commonwealth v. Smith*, 511 Pa. at 46, 511 A.2d at 801.

Today, the majority undermines this rule by allowing police to conduct a warrantless search of a fire-damaged apartment with the sole purpose of seizing controlled substances. The majority achieves this result by bootstrapping a warrantless police search with an improper objective, i.e. to seize drugs, onto a prior search by a fire marshal with a proper objective, i.e. to respond to the exigency created by the fire. The majority reasons that Mr. Person lost all expectation of privacy in his apartment after the fire marshal entered the rooms of the apartment and observed drugs in plain view. Therefore, the majority concludes, the police were free to retrace the fire marshal's steps and seize the evidence.

At the outset, it must be emphasized that the fact that the fire marshal observed drugs in plain view is irrelevant. It might be argued that a public official's observation of contraband in plain view destroys all legitimate expectation of privacy *in the contraband.* It would not follow, however, that the observation of contraband can destroy a legitimate expectation of privacy *in the building in which the contraband is stored.* In this regard, *Commonwealth v. Weik,* 360 Pa.Super. 560, 521 A.2d 44 (1987) is instructive. In *Weik,* police officers looked through the windows of a shed on the defendant's property and observed slot machines therein. The officers had probable cause to believe that the defendant was illegally maintaining the slot machines for gambling purposes. Instead of securing a search warrant, the officers forcibly entered the shed and seized the machines. A panel of the Superior Court concluded that although the machines were clearly in plain view, the observation of the machines did not alter the defendant's legitimate expectation of privacy in the interior of his shed. Accordingly, the police conducted an illegal search when they entered the shed and took custody of the machines. *See generally Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039 (plain view alone cannot justify subsequent warrantless entry and seizure).

Under *Weik,* the police could not have entered appellee's apartment even if they had personally observed the contraband through appellee's bedroom window. Clearly then, the police could not have entered the apartment simply because another public official—a fire marshal—had observed the contraband. The question thus becomes whether the mere entry of the fire marshal into appellant's apartment defeated appellee's expectation of privacy so as to allow an independent entry by the police. I would hold that it did not.

Whether the fourth amendment bars a warrantless search by a particular government official must be assessed in light of the identity of the official and the reason for his search. A defendant may be entitled to full fourth amendment protection as against police searches even where a search by an employee of another government agency in the same location would fall within an exception to the warrant requirement. *See generally Commonwealth v. Black,* 365 Pa.Super. 502, 509–16, 530 A.2d 423, 427–30 (1987), *allocatur granted,* 518 Pa. 635, 542 A.2d 1365 (1988), *appeal dismissed as improvidently granted,* 520 Pa. 115, 552 A.2d 1046 (1989).

In *Commonwealth v. Black,* the defendant managed a private club which was licensed for the sale of alcohol. A municipal police officer accompanied agents of the Liquor Control Board on a raid of the club, and the defendant sought to suppress contraband that the police officer seized. The search by the Liquor Control Board agents was constitutional since it fell within an exception to the warrant requirement which permits searches of the alcoholic beverage industry where authorized by statute. *See Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). At the time of the raid, however, no Pennsylvania statute authorized an administrative search of licensed clubs by municipal police officers. Since the police search did not come within a recognized exception to the warrant requirement, a unanimous panel of the Superior Court found that the search infringed upon the defendant's

privacy interest in the club premises. The fact that the "closely regulated industries" exception to the warrant requirement permitted Liquor Control Board agents to search the club did not destroy Mr. Black's legitimate expectation of privacy. Similarly, in the instant case, the fact that the exigent circumstances exception to the warrant requirement permitted the fire marshal's search did not destroy appellee's legitimate expectation of privacy.

The majority, however, refuses to recognize that appellee's legitimate expectation of privacy was infringed when three uniformed policemen entered his apartment during his absence. Under the majority's rationale, if one public official lawfully enters a residence, two, three, four, or a dozen more may follow. I do not believe that this view is consistent with commonly held societal understandings regarding the sanctity of the home. A tenant or homeowner should not be forced to endure an intrusion simply because a prior intrusion has gone before. At least where an area is so private that it falls at the very core of fourth amendment protection, each governmental intrusion ordinarily produces a separate injury to privacy and dignity. This is true of both the body and the home. *Cf. Commonwealth v. Kean,* 382 Pa.Super. 587, 613, 556 A.2d 374, 387 (1989) ("To be forced to disrobe before a stranger is an invasion of privacy; to be forced to disrobe before a second stranger and a third stranger is a further invasion of privacy. To be spied upon by a Peeping Tom while in bed is an invasion of privacy; to be spied upon by a series of Peeping Toms and then by the police is a greater invasion of privacy.") Thus, a fire fighter who enters a home for the salutary purpose of extinguishing a fire does not pave the way for a general warrantless police search for evidence of crime.

I acknowledge that certain courts in other jurisdictions have held that a policeman may piggyback a search for criminal evidence on a fireman's search to determine the cause of a fire. *Steigler v. Anderson,* 496 F.2d 793 (3rd Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *United States v. Green,* 474 F.2d 1385 (5th

Cir.1973), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973); *United States v. Johnson,* 524 F.Supp. 199 (D.Del.1981), *rev'd on other grounds,* 690 F.2d 60 (3rd Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983); *State v. Bell,* 108 Wash.2d 193, 737 P.2d 254 (1987). Each of these cases rests on the false premise that the fire fighter's search wholly exhausts a resident's legitimate expectation of privacy in the home.

The better view is reflected in *United States v. Hoffman,* 607 F.2d 280 (9th Cir.1979). In that case, a fireman observed a sawed-off shotgun after removing a smoldering mattress from the defendant's trailer. The fireman notified Officer Heiden, a policeman, who then entered the trailer without a warrant and seized the weapon. On appeal, the Ninth Circuit ordered the evidence suppressed. The court explained:

> In this case, the warrantless entry of the police officer, following that of the firefighters, exceeded the scope of the initial intrusion by the firemen. Officer Heiden did not enter the trailer to aid in extinguishing the blaze or to investigate the cause. His only purpose in entering appellant's trailer, as he forthrightly admitted, was to seize evidence of an unrelated crime. The fact that the police officer's actual physical intrusion was no greater than that of the firemen does not control our examination of appellant's Fourth Amendment violation. *Katz v. United States,* 389 U.S. at 351–53, 88 S.Ct. 507 [511–12] (1967); *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977). Rather, "the Fourth Amendment protects people not places." *Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511. Fire victims do not abandon all reasonable expectations of privacy. *Michigan v. Tyler, supra,* 436 U.S. at 505, 98 S.Ct. 1942 [1947]. One whose home is ablaze certainly should expect that firemen will enter in order to extinguish the fire. Likewise, one should also expect that these same firefighters will be looking for the source or cause of the fire while within

the home. But, no citizen should reasonably expect that, because a fire has occurred in his home, and certain few officials may enter, any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion.

*Hoffman,* 607 F.2d at 284–85 (footnotes omitted). I find this reasoning persuasive and would adopt it.

I further note that the limits which the majority imposes on the privacy of the home has potential consequences far beyond the context of post-fire inspections. Several of the dangers inherent in the theory that the majority adopts were perceptively analyzed by Chief Justice Pearson of the Washington Supreme Court in his concurring opinion in *State v. Bell.* I share the concerns expressed in the following portion of his commentary.

> The majority holds that once one government agent lawfully enters and remains in an individual's home, the reasonable expectation of privacy is destroyed, and other government agents may follow in the first agent's footsteps.... The implications of such a conclusion are troublesome. First ... if no reasonable expectation of privacy remains in the home, then police officers may enter without justification—that is: without probable cause, without a warrant, and without any of the circumstances that typically justify a warrantless entry. Suppose that fire fighters had not discovered contraband in petitioner's home but the police had just wandered by and decided to enter in hopes that something unlawful might turn up. Under the majority's analysis, a dozen officers could crowd into the home for no purpose whatsoever: petitioner would have no Fourth Amendment claim to raise, for he would have no reasonable expectation of privacy.

> Secondly, under the majority's analysis, once the fire fighters entered the home, the IRS agent, the INS agent, and the state social worker would be free to enter. As I indicated above, when no reasonable expectation of privacy exists in a location, any government agent may enter.

A call to the city ambulance for a medical emergency suddenly opens one's home to the tax assessor and the marines. How can petitioner raise a Fourth Amendment objection when he has no reasonable expectation of privacy?

Although no one expects such outrageous scenarios to actually arise, they do illustrate the problem with the majority's reasoning. A home is not like navigable airspace, a store, or a public pathway, where any federal or state officer may wander freely. We cannot dispense with the requirement that government officers entering a person's home have some justification for their entry. What that justification may be will depend on the circumstances, but it certainly must be more than the observation that some other government officer "is already there". It would be a grave disfigurement of the constitution to hold otherwise.

Finally, the majority's reasoning would permit a different but perhaps more likely scenario—and one that is equally impermissible: circumvention of the probable cause and warrant requirements....

....

Under the majority's analysis ... once a fire inspector lawfully enters a building to determine the cause or origin of a fire, police officers pursuing a criminal investigation may follow on the inspector's heels without bothering to obtain the traditional "criminal" warrant. Whether such circumvention of the probable cause and warrant requirements for criminal investigations is ever likely to be a prevalent practice is beside the point; the critical question is whether the constitution would prevent the practice. I believe it would, although the majority opinion would suggest otherwise.

*Bell*, 108 Wash.2d at 207–09, 737 P.2d at 263–64 (Pearson, C.J., concurring).

I believe that the best policy is to protect against erosion of the fourth amendment by adhering to the general rule that each entry of the home by a government official must

be made pursuant to a warrant or a traditionally recognized exception to the warrant requirement. I would follow the lead of the Ninth Circuit in *Hoffman* and hold that an entry into the home by a fire official under exigent circumstances cannot support a later intrusion into the home by a policeman with a wholly different objective. I would therefore conclude that the seizure of contraband in this case was the fruit of an unconstitutional police search of the apartment, and I would affirm the trial court's suppression order.

## III. ILLEGAL SEIZURE BY POLICE

Even if I could accept the majority's argument that police could enter the apartment, I would still find that the police in the case sub judice conducted an illegal seizure. The majority holds that the police can seize only such evidence as the fire marshall would have been justified in seizing. *See* Majority Op. at 210–212. Unlike the majority, I do not believe that a Montgomery County fire marshal is justified in seizing evidence in a home which is unrelated to the investigation of arson or any related crime in the absence of exigent circumstances. Thus, the police could not validly seize contraband under the guise of "[standing] in the shoes of the fire marshall." *Id.* at 213.

The question of which types of evidence a fire marshal is authorized to seize is primarily a matter of state law. The duties and responsibilities of a fire marshal are governed by the Counties Code. *See* Pa.Stat.Ann tit. 16, §§ 6101–6110 (Purdon 1956). Section 6104 of the Code states that a fire marshal shall attempt to save property from fire, pillage, theft, and destruction. Section 6105 grants fire marshals the power to arrest persons who have willfully set buildings on fire. Nothing in the Code indicates that fire marshals in Pennsylvania have general police powers and may seize evidence solely because it would be relevant to a prosecution for possession of controlled substances. *Cf. Commonwealth v. Smith,* 511 Pa. at 46, 511 A.2d at 801 ("[F]iremen may seize any evidence which is in plain view *of the cause and origin of the fire.*" (emphasis added)). Instead of

seizing contraband on his own, a fire marshal should ordinarily inform a policeman of the existence of the contraband. The policeman should then seize the contraband after securing a proper warrant.

In reaching the opposite conclusion, the majority relies upon cases from other jurisdictions. In these cases, the powers of fire officials were governed by statutes which do not apply in this Commonwealth. In *State v. Bell, supra,* where an assistant fire marshal organized the seizure of marijuana plants, a Washington statute vested fire marshals with "police powers to enforce the laws of the state." 108 Wash.2d at 203 n. 1, 737 P.2d at 260 n. 1 (Pearson, C.J., concurring) (citing RCW 48.48060(2)). Similarly, in *United States v. Green, supra,* an applicable Florida statute granted the state fire marshall "the same authority to ... make searches and seizures, as the sheriff or his deputies...." 474 F.2d at 1389 n. 2 (citing Fla.Stat.Ann. § 633.14). In *United States v. Johnson, supra,* an applicable section of a local code granted fire fighters "all the powers conferred by statute and ordinance upon constables, sheriffs and state police of the State of Delaware." 524 F.Supp. at 205 n. 3 (citing Wilmington City Code 5–31). And in *Steigler v. Anderson, supra,* a case involving the seizure of evidence of arson, an applicable Delaware statute granted fire marshals the power to "enforce all laws and ordinances of the State ... having to do with ... the suppression of arson." 496 F.2d at 796 n. 7 (citing Del.Code § 6607).

I would conclude that in the absence of such statutory language, a fire marshal would not be authorized to seize evidence evidence under the circumstances present in this case. Momorella would have acted improperly if he had seized the contraband himself instead of contacting Officer McGowan. Furthermore, when the police seized the contraband, they exceeded the limits of Momorella's legitimate seizure power. The police seizure cannot be viewed as the functional equivalent of any seizure which the fire marshal could have carried out.

I express no opinion as to whether a hypothetical confiscation of the drugs by the fire marshal would have been an "unreasonable seizure" within the meaning of the fourth amendment. Not every act by a government official which exceeds the scope of his authority rises to the level of a constitutional violation. *See Commonwealth v. Mason*, 507 Pa. 396, 405–07, 490 A.2d 421, 426 (1985). Yet, since Momorella was not authorized to seize the contraband, he could not have been *justified* in seizing the contraband even though he observed it in plain view. And since Momorella would have had no justification for making the seizure, the police cannot justify their own seizure based upon what Momorella might have done. Accordingly, the warrantless seizure of evidence in this case does not even fall within the new exception to the warrant requirement that the majority today recognizes. The evidence should be suppressed.

I respectfully dissent.